## SEPTEMBER TERM, 1771.

### DORSEY's Executors *vs.* WORTHINGTON.

ATTACHMENT upon a judgment, with a clause of *sci. fa.* under the act of 1715, *ch.* 40, s. 7.

THE CASE. The defendant was taken and committed in execution, upon sundry judgments, at the suit of the present plaintiffs, to *R. Adair*, late sheriff of Baltimore county, and remained in execution during his sheriffalty. *Adair* omitted to assign the defendant over to *D. Chamier*, who succeeded him. The defendant was in the custody of *Chamier* under other executions, but not being detained by him on the plaintiffs executions, he went at large. The plaintiffs sued out the present attachment.

MOTION, on the part of the defendant, to quash the attachment.

*Chase*, for the motion. An attachment on a judgment is in the nature of a *fieri facias* at common law.—Act of Ass. 1715, *ch.* 40. A *fieri facias* is a judicial writ at common law, on which the goods and chattels only of the debtor could be taken in execution. It took its name from the words of the writ.—*Co. Litt.* 290. *b.* 3 *Co.* 11.

SEPT. 1771.

Dorsey
vs.
Worthington.

The writs of execution at common law were only a *fi. fa.* on the goods and chattels, and a *levari facias*, to lay the debt and damages upon the land and chattels.—*Dalt. Off. Sh.* 144. 2 *Bac. Ab.* 351. 3 *Co.* 12. *a.* At common law neither the *person*, nor the *lands* of a debtor, were liable to execution, except in the case of the king, and of an heir on the obligation of his ancestor.—2 *Inst.* 394. 2 *Bac. Ab.* 328. *Dalt.* 144. *Godb.* 290. 3 *Co.* 12, *b.* The *person* was not liable, that he might be at liberty not only to follow his own affairs, but to serve the king.—*id.* The *lands* were not liable, because to take away the possession of lands, would hinder the following of tillage.—*id.*

The common law was altered on commercial principles.—2 *Bac. Ab.* 329. The statute of Acton, made the 11 *Edw. I. anno* 1283, and enforced and amended by 13 *Edw. I. anno* 1285, for the security of merchants, and encouragement of trade, subjected not only the goods and *person*, but the land of the debtor, into whose hands soever they came, *after the statute acknowledged.*—2 *Bac. Ab.* 329. *Dalt.* 144. The statute 13 *Edw. I. c* 18, (commonly called the statute of Westminster 2d.) gave the *elegit*, and gave the creditor either a *fi. fa.* against the chattels of the debtor, or a writ to the sheriff to deliver all the chattels, saving oxen and beasts of his plough, and one half of the land, till the debt was levied, upon a reasonable price or extent.—2 *Bac. Ab.* 329. *Dalt.* 134, 144. The statute 25 *Edw. III. c.* 17, *(anno* 1350,*)* subjected the person of the debtor, and gave the *capias ad satisfaciendum.*—2 *Bac. Ab.* 329, 351. *Dalt.* 138, 144. But by the common law a *capias ad satisfaciendum* lay in trespass *vi et armis,* being a direct and wilful wrong, and in other cases by the above statute—3 *Co.* 12, *a.* *Hob.* 56. *Gilb. Ex.* 59.

The plaintiff has his election to sue out what kind of execution he pleases, but not two different executions on the same judgment, nor a second of the same nature, unless upon failure of satisfaction on the first.—2 *Bac. Ab.* 353, 355. And it was formerly held that the praying an *elegit* on the roll, was a bar to all other executions, but now otherwise, and that the return of the lands delivered by the sheriff is a bar to a new execution.—*Gilb. Ex.* 51. 1 *Lev.* 92.—If the debtor died in execution, the plaintiff had no further remedy, because he had determined his choice.—2 *Bac. Ab.* 354. 1 *Stra.* 653. *Vin. tit. Execution,* 28, *pl.* 1, 2, 9. 5 *Co.* 86. *b.* The statute of 21 *Jac. c.* 24, gave a new execution after the death of the debtor in execution—2 *Bac. Ab.* 354. 2 *Jones,* 21. 3 *Blk. Com.* 414 *to* 421. If a debtor is taken on *ca. sa.* and escapes, or is rescued, though sheriff is liable, yet the plaintiff may take out

*any* new execution, for the sheriff may be dead or insolvent—2 *Bac. Ab.* 355. Cites *Cro. Car.* 40, 240. 2 *Bac. Ab.* 239. Formerly held, if sheriff suffered a prisoner in execution to make a voluntary escape, the prisoner was absolutely discharged from the creditor, and sheriff only liable, but latter cases are otherwise, and plaintiff may have a new action of debt or *sci. fa. quare executionem non* against the prisoner. 2 *Bac. Ab.* 240. 1 *Lev.* 211. Cites *Sid.* 330. *Allanson and Butler,* which case is approved. *Holt. Rep.* 279. 1 *Show.* 174. Cites 2 *Jones,* 21, *Carter,* 212. Cites 1 *Mod.* 194. 2 *Lut.* 1264. Prisoners, until they are turned over to the new sheriff, remain in the custody of the old sheriff, and if he omits to deliver them over, every omission is an escape, and he is liable —2 *Bac. Ab.* 241.

Quere—Whether *Chamier* is liable to the plaintiffs for the escape of *Worthington?* 2 *Bac. Ab.* 242. 4 *Bac. Ab.* 445.

The statute of 8 *and* 9 *Will. III. c.* 27. takes away all distinction between voluntary and permissive escapes with regard to the plaintiff's remedy—2 *Bac. Ab.* 240. See judges oath, Act of 1732, *c.* 5. and debates and proceedings of the upper and lower houses in 1725 and 1726. 1 *Blk. Com.* 106, &c. See *Com. Dig.* 183. 2 *Mod.* 136. *Freem.* 213, 398, *pl.* 619. *Salk.* 271. *Hob.* 60. *Vin. tit. Execution,* 38, *pl.* 8, 9; 44, *pl.* 11; 26, *pl.* 1. *Bro. Ab. tit. Execution,* 302, *pl.* 86.

*Johnson* and *Alexander,* contra. It is immaterial whether the escape was in *Adair's* or *Chamier's* time, the proceeding is justified by the authorities produced by the counsel in favour of the motion, where the party has not had the benefit of his execution—*Cro. Car.* 255. 2 *Roll. Ab.* 904, *pl.* 10, 11. *Vin. tit. Executions,* 26, *pl.* 4, 6; 39, *pl.* 10, 11. (8 *Car. I*) 2 *Mod.* 136. (28 *Car. II.*) The courts of justice, and statutes, are approaching to that perfection so as to give complete satisfaction on judgments. If the statute of *James* does not apply here, on a person dying in execution, no new execution would lie against his effects. The creditor has a right to the body of the debtor during his life, and if he dies in execution, he has a remedy against his goods. If he escapes before he dies, there is no satisfaction, and the execution is not complete, therefore it is within the reason of the case of his death. In the case in *Hobert* the point was not before the court, and the case in *Roll. Ab.* states that *Rolle* himself was counsel in the case. The case in *Modern* says the point had lately been settled, which was adjudged ten years after *Rolle.* There is nothing in the books afterwards on the subject. The statute of *William* extends to all gaols in England. 1 *Bac. Ab.* 240, shews

that the statute meant to take away the distinction between voluntary and permissive escapes. Statutes are not to have a retrospect—4 *Burr.* 2460. 1 *Wils.* 35. 2 *Vern.* 642. A new act has no retrospect, so as to take away an action to which the plaintiff was entitled before the commencement thereof—19 *Vin. Ab.* 524. Cites 2 *Mod.* 310. (30 *Car. II.*) 2 *Inst.* 292. 2 *Rep.* 81.

THE PROVINCIAL COURT did not *quash* the attachment. The garnishees appeared, and the case went on against them.